IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUSTUS AKWENUKE,<br><br>   Plaintiff,<br> v.<br><br>AMERICAN AIRLINES, INC.,<br><br>   Defendant. | Case No.: 3:23-cv-00031-AN<br><br><br>OPINION AND ORDER |

  Plaintiff Justus Akwenuke filed this action in Multnomah County Circuit Court against defendant American Airlines, Inc. ("American Airlines") and a Jane Doe defendant, alleging intentional racial discrimination in violation of Oregon Revised Statute ("ORS") § 659A.403, defamation, and intentional infliction of emotional distress. Defendant removed the action to federal court. On December 7, 2023, defendant filed this Motion for Summary Judgment, ECF [16], pursuant to Federal Rule of Civil Procedure 56(a). Plaintiff subsequently filed an amended complaint against defendant alone. On January 26, 2024, defendant filed a Supplemental Motion for Summary Judgment, ECF [29]. The Court heard oral arguments from the parties on September 25, 2024. For the reasons set forth below, defendant's motions are GRANTED.

## LEGAL STANDARD

  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases omitted). The substantive law determines

1

which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

On November 28, 2021, plaintiff was traveling for work from Portland, Oregon, to Phoenix, Arizona, on American Airlines flight #AA1816. Def. Mot. for Summ. J. ("Def. Mot."), ECF [16], at 3. The flight was booked by plaintiff's company's travel agency, Hunter World Travel. *Id.*; Pl. Resp. to Def. Mot. for Summ. J. ("Pl. Resp."), ECF [21], at 2. Prior to the trip, plaintiff requested upgrades to window or aisle seats on all of his flight segments from Portland to Phoenix to Washington, DC, then back to Portland. Def. Mot. 3. Plaintiff was able to upgrade his subsequent flights, but an upgraded seat was not available on the initial Portland to Phoenix flight. *Id.* Thus, when plaintiff arrived at the airport to check in, he was still ticketed for a middle seat. *Id.*

While plaintiff was checking in at an American Airlines kiosk, an American Airlines customer service agent, Chelsea Hathorn, noticed that plaintiff was visibly frustrated. *Id.* Hathorn asked if she could help plaintiff with anything, but he brushed her off and said he did not need assistance. *Id.* Plaintiff then dropped his bag at the bag drop counter and began walking toward TSA. *Id.*; Pl. Resp. 2.

Before reaching security, plaintiff realized he did not have the aisle or window seat he wanted, so he went back to the check-in counter.  Def. Mot. 4; Pl. Resp. 2.

Plaintiff walked to the bag drop counter, and a different American Airlines agent, Jacqueline Delaney, noticed that plaintiff did not have a bag and asked if he was checking a bag.  Def. Mot. 4.  Plaintiff indicated he did not need assistance with a bag, so Delaney directed him to the main cabin line where he could receive assistance with his seat upgrade request.  *Id.*  Delaney pointed toward the other line with her left hand.  *Id.*

Plaintiff promptly gestured toward the conveyor belt behind Delaney with his right hand to indicate that he had just dropped off his luggage but needed assistance with his seat assignment.  Def. Mot. 4; Pl. Resp. 2.  Plaintiff characterized himself during this interaction as "so calm."  Decl. of Samantha A. Pitsch in Support of Def. Mot. for Summ. J., Ex. A ("Akwenuke Dep."), ECF [17-1], 38:9-16.  Delaney testified that plaintiff had slapped her hand away, saying that she was not listening to him.  Decl. of Jacqueline Delaney, ECF [18], ¶ 4.  Delaney then yelled at plaintiff, "You touched me, you touched me, you touched me!"  Def. Mot. 4; Pl. Resp. 2.  Delaney testified that she and plaintiff were both yelling back and forth at this point in the interaction.  Def. Mot. 4.  Plaintiff denied touching Delaney but gave no explanation for why Delaney would have yelled, "You touched me."  Akwenuke Dep. 38:3-8, 40:9-11.

Hathorn was assisting the main cabin line approximately two computers away and overheard the interaction.  Def. Mot. 5.  She stated that she heard a "slap type noise" and heard Delaney tell plaintiff not to touch her.  *Id.*  Hathorn asked Delaney if she wanted law enforcement assistance, which Delaney declined.  *Id.*  Plaintiff alleged that there were at least ten people in the vicinity who were close enough to have heard the remark, although he admitted that the closest person was ten to twenty feet away and walking through the airport.  Pl. Resp., Ex. A ("Akwenuke Decl."), ¶ 19; Akwenuke Dep. 36:19-37:8.

Plaintiff then went to the main cabin line.  Def. Mot. 5; Pl. Resp. 2.  Hathorn assisted him with his complaint about the seating assignment.  Def. Mot. 5; Pl. Resp. 2.  Plaintiff was still frustrated because he thought he had paid for an upgraded seat on the Portland to Phoenix flight.  Def. Mot. 5; Pl. Resp. 2.  Hathorn explained to plaintiff that he had upgraded the seats on his later flights but did not have

3

an upgrade on his flight from Portland, nor had he been charged for an upgrade. Def. Mot. 5; Pl. Resp. 2.

Hathorn then provided plaintiff with several options, including purchasing another seat or asking the gate agents if they could switch his seat. Def. Mot. 5. Hathorn explained that there are usually additional seats available at the gate that are not available at the check-in counter because seats for passengers who had not yet checked in are released thirty minutes before the flight and can be reassigned. *Id.*

At this point, plaintiff walked away and passed through security. *Id.*; Pl. Resp. 3. After reaching the boarding gate, plaintiff asked the gate agent if any window or aisle seats were available. Def. Mot. 6; Pl. Resp. 3. Delaney was the gate agent, although plaintiff did not recognize her. Def. Mot. 6. Delaney informed plaintiff that there were window seats available for $35 in economy, and he purchased the upgrade. *Id.*; Pl. Resp. 3. Plaintiff admitted at his deposition that the gate agent who assisted him with his seating change "made [his] day." Akwenuke Dep. 46:2-6. Plaintiff then boarded his flight and traveled to Phoenix without incident. Def. Mot. 6. Plaintiff admitted at his deposition that none of defendant's agents mentioned his race at any time. Akwenuke Dep. 48:12-19.

Delaney subsequently informed her supervisor, Gary Kwong, about the verbal altercation with plaintiff. Def. Mot. 6. Kwong wrote a report documenting the incident. *Id.* Based on the reported allegation of an assault by a passenger, plaintiff was automatically placed on defendant's Internal Refuse List pending further investigation. *Id.* At the time, plaintiff was in Phoenix and his subsequent travel to Washington, DC, and Portland was cancelled. *Id.* Defendant's corporate security investigator, Michael Flores, interviewed Delaney and Hawthorn and determined that plaintiff did not intend to physically harm Delaney even though his conduct was inappropriate. *Id.* at 6-7. Thus, plaintiff's flight privileges were reinstated on November 30, 2021, two days after they were temporarily restricted. *Id.* at 7.

Plaintiff was able to book alternative flight arrangements through his corporate travel agency and completed his work travel through a different airline. Akwenuke Dep. 59:7-23. He did not miss any work and later informed his employer about his interactions with the American agents. *Id.* at 59:7-23, 70:3-20. His report had no impact on his employment. *Id.* at 71:25-72:8. Though plaintiff testified

that there had been some changes in his work situation, such as reduced hours, he testified that those changes were due to his employer finding him to be "too skilled" and wanting him to have more flexibility to rotate between teams. *Id.* at 75:14-76:5.

## DISCUSSION

A.  **Racial Discrimination**

The Oregon Public Accommodations Act (OPAA) provides:

"[A]ll persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, color, religion, sex, sexual orientation, gender identity, national origin, marital status or age."

Or. Rev. Stat. § 659A.403(1) (2024).

The OPAA further makes it "an unlawful practice for any person to deny full and equal accommodations, advantages, facilities and privileges of any place of public accommodation in violation of this section." Or. Rev. Stat. § 659A.403(3). Federal courts apply the *McDonnell Douglas* burden-shifting analysis to racial discrimination claims that arise under state law. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001); *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1093 (D. Or. 2020).

Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination. *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006). To state a prima facie case under ORS § 659A.403, a plaintiff "must establish that he was treated unequally because of his race and that he has been injured as a result." *Clark*, 478 F. Supp. 3d at 1093. Proof of intentionally discriminatory conduct is required. *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1089 (D. Or. 2018). The requisite level of proof to establish a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Lindsey*, 447 F.3d at 1144 (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)) (internal quotation marks omitted). Circumstantial evidence of discriminatory intent is sufficient to evidence unequal treatment. *Clark*, 478 F. Supp. 3d at 1093. However, evidence of discriminatory effect is insufficient to establish a

racial discrimination claim. *Harrington*, 348 F. Supp. 3d at 1089.

Here, the undisputed evidence is that plaintiff asked Delaney for help with a seat upgrade request at the bag drop line and Delaney pointed plaintiff to the main cabin line. Plaintiff promptly gestured toward the conveyor belt behind Delaney to indicate that he had already dropped off his luggage. Delaney yelled, "You touched me," three times at plaintiff, and Delaney and plaintiff had a verbal altercation. Plaintiff then went to the main cabin line. At the counter, Hathorn told plaintiff that he did not have an upgrade on his first flight and that she could not upgrade his seat at that moment, but that plaintiff could purchase a premium or first-class seat or ask the gate agent for other seat options. Delaney later upgraded plaintiff's seat for $35 at the boarding gate. At no point did Delaney or Hathorn make any statements related to plaintiff's race.

Defendant argues that summary judgment on this claim is appropriate because plaintiff cannot produce any evidence of racial animus or intentional discrimination.

The only evidence in the record regarding intentional discrimination is plaintiff's declaration. Plaintiff states: "I believe that Delaney treated me unequally, because I am a black male." Akwenuke Decl. ¶ 11. He also states: "I sensed intentional racial discriminatory conduct when Delaney started yelling and telling me 'this is baggage claim,' her facial expression gave her up, before she yelled 'you touched me, you touched me.' I sensed it. Delaney appeared determined to humble me when she made up the 'touching' comments. Delaney's discriminatory reaction to me was calculated and intentional." *Id.* ¶ 18. He further states: "I perceived that Delaney . . . yelled 'you touched me' to conceal her discriminatory motive for refusing to attend me. Delaney was hellbent on humiliating me, because I am black." *Id.* ¶ 20. However, these declarations alone do not give rise to an inference of discriminatory intent. Plaintiff describes conduct that is race-neutral and pleads no facts that demonstrate that any actions that occurred were related to racial discrimination. *See Ofuasia v. Spirit Halloween Superstores, LLC*, No. 3:20-cv-00076-YY, 2021 WL 3783069, at *4 (D. Or. July 21, 2021), *report and recommendation adopted*, 2021 WL 3779834 (D. Or. Aug. 24, 2021), *aff'd*, No. 21-35783, 2022 WL 15523098 (9th Cir. Oct. 27, 2022).

Moreover, plaintiff's declaration consists largely of speculation, bare allegation, and

conclusory statements. The aspects of the conduct that plaintiff argues evidence discrimination are speculative, such as the argument that Delaney's statement was intended to "humble" plaintiff or to infer "sexual touching." Nothing about the described interaction supports the speculative nature of these arguments, and the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). The fact that plaintiff himself admitted he had "[n]o idea" why Delaney would falsely make such a statement evidences the speculative nature of his allegations. Akwenuke Dep. 40:9-11.

Plaintiff offers no other evidence of discrimination, such as race-based statements, racial slurs, or proof that he was treated differently because of his race. In fact, plaintiff acknowledges that Delaney did not use any slurs, derogatory terms, or racial epithets during their brief interaction. Even viewing the facts in the light most favorable to plaintiff, there is no direct or circumstantial evidence from which to draw the inference that defendant's actions were because of plaintiff's race. On the contrary, the evidence in the record shows that Delaney ultimately upgraded plaintiff's seat at the boarding gate.

Because plaintiff fails to establish a prima facie case of discrimination, summary judgment on plaintiff's OPAA claim is appropriate.

**B.    Defamation**

Under Oregon law, a plaintiff bringing a defamation claim must prove that (1) the defendant made a defamatory and false statement; (2) that the defendant published the defamatory material to a person other than the plaintiff; and (3) a resulting special harm, unless the statement is defamatory *per se*. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.*, 220 Or. App. 560, 584, 188 P.3d 332 (2008).

To be actionable, a statement "must be both false and defamatory." *Reesman v. Highfill*, 327 Or. 597, 603, 965 P.2d 1030 (1998). "A defamatory statement is one that . . . subject[s] the plaintiff to hatred, contempt, or ridicule"; "tend[s] to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held"; or "tends to excite adverse, derogatory, or unpleasant feelings or opinions against the plaintiff." *Neumann v. Liles*, 358 Or. 706, 711, 369 P.3d 1117 (2016) (internal citation, quotation marks,

and alterations omitted). A statement is defamatory *per se* if it tends to injure plaintiff in his business or profession or imputes to plaintiff the commission of a crime involving moral turpitude. *Nat'l Union*, 220 Or. App. at 584 & n.6. Whether a statement is capable of defamatory meaning is a question of law for the court. *Reesman*, 327 Or. at 604. In making that determination, the court looks to the context in which the statement was made. *Id.* A plaintiff may allege that a facially nondefamatory statement is defamatory by implication, but the link between the statement and the defamatory inference must not be "too tenuous." *Id.* (internal citation and quotation marks omitted). In other words, the inference that a plaintiff seeks to draw from the facially nondefamatory statement must be reasonable. *Id.*

    Plaintiff argues that defendant defamed him when Delaney yelled, "You touched me," at the bag drop counter. Plaintiff concedes that the statement was facially nondefamatory but argues that Delaney's volume, tone, and statement implied that plaintiff touched her inappropriately and portrayed him as a "sexual predator as if he had committed a crime." Pl. Resp. 9. Plaintiff further appears to argue that Delaney's statement imputed moral turpitude because it suggested that plaintiff committed the crime of sexual assault, and thus damages are presumed. Defendant argues that summary judgment on this claim is appropriate because plaintiff fails to establish any of the elements of defamation.

    Assuming the facts in the light most favorable to plaintiff, there is a genuine dispute as to whether Delaney's statement was published because Hathorn appeared to have heard the interaction between plaintiff and Delaney. However, plaintiff fails to establish that the statement is defamatory by implication. In the context in which Delaney made the statement, plaintiff and Delaney were speaking across a bag drop counter and both gesturing with their hands. It would be tenuous and unreasonable for a person who heard Delaney yell, "You touched me," to make a defamatory inference rather than infer that plaintiff and Delaney's hands touched while they were gesturing. Plaintiff identifies no other evidence on the record that Delaney was accusing plaintiff of sexual assault, aside from his own interpretation of her statement. While her statement could reasonably infer unconsensual touching, the implication that the touching was sexual in nature has no support in the record. Any link between the statement and plaintiff's proffered inference is far too tenuous to indicate defamation, let alone defamation *per se*.

Moreover, plaintiff does not offer any facts to establish that he suffered a resulting special harm. As plaintiff admitted in his deposition, he did not lose his job, face any discipline, or lose any income as a result of the interaction with Delaney.

Because plaintiff fails to show that the statement was defamatory or that he suffered a special harm, summary judgment on plaintiff's defamation claim is appropriate.

C.     **Intentional Infliction of Emotional Distress**

"To state a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must [prove] that (1) the defendant intended to inflict severe mental or emotional distress on the plaintiff; (2) the defendant's acts were the cause of the plaintiff's severe emotional distress; and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995) (internal citation and quotation marks omitted).

Plaintiff argues that Delaney's yelling, tone, and facial expression is sufficient evidence of intent to inflict severe emotional distress. Plaintiff also asserts that he was "ashamed and dumbfounded" and felt "pain and humiliation." Akwenuke Decl. ¶¶ 19-20. Finally, plaintiff argues that Delaney's conduct was extraordinary because when Delaney yelled, "You touched me," at least ten people who were in the vicinity could have heard the statement, seen who uttered it, and perceived to whom it related. Plaintiff argues that any reasonable person in plaintiff's circumstances "would have suffered distress from feeling ashamed to such an extreme as to feel self hatred." Pl. Resp. to Def. Suppl. Mot. for Summ. J. ("Pl. Suppl. Resp."), ECF [30], at 4. Defendant argues that summary judgment on this claim is appropriate because plaintiff fails to establish any of the elements of IIED.

Plaintiff fails to establish an intent to cause severe emotional distress. Plaintiff's proffered evidence of intent is derived solely from his own self-serving statements and allegations with no other supporting evidence. As previously described, these assertions are insufficient as a matter of law to prove intentional conduct. *See, e.g.*, *Gaines v. Nordstrom, Inc.*, No. 3:05-cv-689-PK, 2006 WL 2711779, at *8 (D. Or. Sept. 19, 2006) (reasoning that the plaintiff's IIED claim failed "because she . . . offered no evidence, beyond her self-serving conclusions, that she suffered severe emotional distress as a result of [the

9

defendant's] actions").

Further, plaintiff does not offer evidence of severe emotional distress. An IIED claim can be maintained "only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Checkley v. Boyd*, 170 Or. App. 721, 743, 14 P.3d 81, 95 (2000) (quoting *Rockhill v. Pollard*, 259 Or. 54, 63-64, 485 P.2d 28 (1971)) (alteration in original). Plaintiff contends that any reasonable person would have suffered distress in his situation and that he is "presumptively a reasonable person." Pl. Suppl. Resp. 4. However, plaintiffs are not entitled to a presumption that their reactions are reasonable. At most, plaintiff demonstrates temporary annoyance or frustration, which is insufficient to support an IIED claim. Even plaintiff's declaration does not support a finding of severe extreme distress, as he alleges general pain and humiliation but provides no argument or evidence as to the duration or severity of these feelings.

Finally, plaintiff does not present any evidence of outrageous or extreme conduct. Whether a defendant's conduct amounts to an extraordinary transgression of the bounds of socially tolerable conduct is a question of law. *Harris v. Pameco Corp.*, 170 Or. App. 164, 171, 12 P.3d 524 (2000). The inquiry is whether the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008) (internal citation and quotation marks omitted). Conduct that is merely "rude, boorish, tyrannical, churlish and mean" does not satisfy that standard. *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239, 828 P.2d 479 (1992) (internal citation and quotation marks omitted). Here, plaintiff does not explain or otherwise provide support for the proposition that yelling is extraordinary conduct. Nor does plaintiff offer any other evidence of extreme or outrageous conduct. Defendant's actions, while upsetting to plaintiff, simply cannot be categorized as atrocious, utterly intolerable, or beyond all possible bounds of decency. At most, plaintiff alleges conduct that is rude but not actionable. *See Mikes v. Albertsons Cos., LLC*, 3:17-cv-01400-JR, 2019 WL 2251821, at *4 (D. Or. Apr. 10, 2019), *report and recommendation adopted*, 2019 WL 2250579 (D. Or. May 24, 2019).

Because plaintiff fails to establish the elements of IIED, summary judgment on plaintiff's

IIED claim is also appropriate.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment, ECF [16], and Supplemental Motion for Summary Judgment, ECF [29], are GRANTED. This case is dismissed.

IT IS SO ORDERED.

DATED this 30th day of September, 2024.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge